<span style="color:red">**FILED**
**Aug 29, 2018**
**11:32 AM(ET)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS</span>



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**COURT OF WORKERS' COMPENSATION CLAIMS**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **José Fleming,** | ) | **Docket No. 2015-01-0377** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Newly Weds Foods, Inc.,** | ) | **State File No. 85737-2015** |
| **Employer.** | ) | |
| **And** | ) | |
| **Sentry Casualty Company,** | ) | **Judge Thomas Wyatt** |
| **Insurer.** | ) | |

---

## COMPENSATION HEARING ORDER FOR PERMANENT PARTIAL DISABILITY BENEFITS

---

This claim came before the Court on August 23, 2018, for a Compensation Hearing. The primary issue was the extent of permanent partial disability (PPD) benefits. José Fleming sought original and resulting awards based on an impairment rating from a non-authorized provider. Newly Weds Foods, Inc. (Newly Weds) argued that the Court should limit Mr. Fleming's original award to benefits based on the treating physician's impairment rating. It also contended that Mr. Fleming should not receive a resulting award because (1) he worked for Newly Weds on the date the original compensation period expired at a higher pay rate than he earned pre-injury, and (2) because it terminated him for cause. For the reasons below, the Court awards Mr. Fleming an original award of PPD benefits based on the treating physician's impairment rating.

### History of Claim

Mr. Fleming is a sixty-two-year-old native of the Dominican Republic. He worked as a dumper at Newly Weds' industrial bakery. He has a sixth-grade education and worked as a construction worker for twenty years before immigrating in 2013.

Mr. Fleming's job at Newly Weds included lifting, carrying and pouring heavy sacks of baking products into large mixers. He also dissembled the mixers, requiring him to manipulate parts weighing up to 150 pounds. He earned an average weekly wage of

1

$819.37 during the fifty-two weeks before the date of injury. Thus, the weekly compensation rate is $546.27.[1]

Mr. Fleming experienced low-back pain at work on July 13, 2015, while bending over a mixer to rotate a 150-pound part for cleaning. He timely notified Newly Weds of his injury.

Mr. Fleming initially selected Physician's Care, a walk-in clinic, from a panel. A physician's assistant directly referred him to orthopedist Dr. Rickey Hutcheson. Mr. Fleming first saw him on October 30, 2015, reporting low-back pain and right- and left-leg numbness and pain. Dr. Hutcheson ordered an x-ray and diagnosed lumbar strain and "lumbar spondylosis and degenerative disk disease that is pre-existing." An MRI revealed a bulging L5-S1 disk that mildly displaced the nerve root, mild to moderate narrowing of the right L5-S1 neural foramen, L4-L5 stenosis, and degenerative disk disease at multiple levels. Dr. Hutcheson concluded that Mr. Fleming suffered a lumbar muscle strain at Newly Weds that did not permanently aggravate or worsen the pre-existing degenerative changes in his spine.

Dr. Hutcheson provided conservative treatment and ordered a functional capacity evaluation. Mr. Fleming was assessed as giving less than maximal effort. Dr. Hutcheson then released him without restrictions, and on February 22, 2016, assigned a two-percent whole-body impairment.

Dissatisfied with Dr. Hutcheson's rating, Mr. Fleming sought an impairment evaluation from Chiropractor Victor Poletajev. Chiropractor Poletajev assigned a rating of eleven percent to the body based on several factors, including pain with activities of daily living, right-leg radiculopathy indicated by straight-leg-raise testing, and diagnoses of L5-S1 herniated disk, spondylosis, and degenerative conditions.

The crux of the dispute at trial concerned the extent of PPD benefits to which Mr. Fleming is entitled. Mr. Fleming relied on the deposition testimony of Chiropractor Poletajev; Newly Weds relied on the Dr. Hutcheson's deposition testimony.

Chiropractor Poletajev testified that he saw Mr. Fleming once for an impairment evaluation. He received and reviewed a medical file compiled by Mr. Fleming's attorney and evaluated his impairment at eleven-percent whole-body impairment under the Sixth Edition of the AMA Guides to the Evaluation of Impairment (the "*Guides*"). He based his rating on the disc abnormalities and stenosis in Mr. Fleming's spine and radicular findings in his legs.

---

[1] At his $11.85 per hour pre-injury pay rate, Mr. Fleming averaged approximately eighteen hours of overtime during the year preceding his injury.

2

Chiropractor Poletajev testified about his extensive training in assessing impairments under several editions of the *Guides.* On cross-examination, he stated that patients hired him to assess impairment approximately 6,100 times and estimated about ninety percent of the examinations were for plaintiffs. Poletajev Dep. 34. He testified that Dr. Hutcheson's impairment rating was "null and void" because he did not consider the impact of Mr. Fleming's injury on his activities of daily living, and he criticized Dr. Hutcheson's report because of its brevity. *Id.* at 21, 30. Chiropractor Poletajev also asserted that he was more qualified than Dr. Hutcheson to assess Mr. Fleming's impairment because the *Guides* require a non-treating physician to assess impairment.

Chiropractor Poletajev offered little testimony about the work-relatedness of Mr. Fleming's injury. When asked if Mr. Fleming's injury was consistent with the history of how he was hurt and the fact he performed a job that required heavy lifting, Chiropractor Poletajev testified, "Very much so, yes. The probability factor I would say is complete[.] It seemed very consistent with this type of injury."[2] *Id.* at 25-26.

On the other hand, Dr. Hutcheson testified that he rated Mr. Fleming's impairment under the *Guides* at two-percent whole-body impairment rating based on a lumbar strain. Hutcheson Dep. 28. He reiterated his opinion that Mr. Fleming has several lumbar diagnoses that pre-existed his injury at Newly Weds and were not permanently aggravated or advanced by the injury at Newly Weds. *Id.*

Dr. Hutcheson used the standard of whether Mr. Fleming's work injury "contribute[d] more than 50 percent in causing his degenerative disk disease considering all causes" in his causation opinions. *Id.* at 19. He stated on cross-examination that the percentage-based assessment of causation under the Workers' Compensation Law represented an "educated guess." *Id.* at 34. Dr. Hutcheson rated Mr. Fleming for impairment on February 22, 2016. *Id.* at Ex. 7.

Turning to issues regarding termination, Mr. Fleming testified he returned to restricted-duty work following his injury and worked continuously until May 2016. He stated that Newly Weds provided light duty while he was under restrictions. Newly Weds returned Mr. Fleming to his regular job after Dr. Hutcheson released him without restrictions following the invalid functional capacity evaluation.

Mr. Fleming testified that performing his regular work caused great pain. He reported his pain to Newly Weds' HR manager, Dan Merriman, several times. The specifics of those conversations are disputed. Mr. Fleming testified that on the last day

---

[2] Chiropractor Poletajev was not asked whether Mr. Fleming's injury, or any spinal diagnosis he received, arose primarily out of and in the course and scope of employment. Further, he was not asked whether Mr. Fleming's injury at Newly Weds accounted for more than fifty percent of the causation of his injury, considering all causes. Chiropractor Poletajev testified that he was not asked to "do any kind of medical-legal issues" in his evaluation. Poletajev Dep. 15.

he worked—approximately May 5, 2016—Mr. Merriman told him to go home and not return. Mr. Merriman denied this, but stated he likely told Mr. Fleming he could go home because of his pain, but he would need to comply with Newly Weds' attendance policy.[3] Mr. Merriman testified he asked Mr. Fleming approximately a week later about the plan for his return to work. Mr. Fleming did not identify a plan, and when he did not return to work or report absent over the next month, Mr. Merriman terminated him for violation of the attendance policy.

Mr. Fleming urged the Court to award PPD benefits because he worked hard for Newly Weds before his injury without physical limitation or lost time. He stated that the injury he suffered at Newly Weds prevents him from being able to work.

Newly Weds urged the Court to limit Mr. Fleming to an original award based on Dr. Hutcheson's two-percent rating. It contended Chiropractor Poletajev's rating is incorrect for several reasons, including the fact he based his rating on diagnoses that did not arise primarily out of and in the course and scope of employment. For these reasons, Newly Weds asserted that the chiropractor's rating did not rebut the presumption of correctness afforded Dr. Hutcheson's rating.

Newly Weds also contended that Mr. Fleming is not entitled to a resulting award because he was employed at Newly Weds on April 25, 2016—the date the original compensation period expired under Dr. Hutcheson's rating—at a higher rate of pay than the pre-injury pay rate.[4] Should the Court adopt Chiropractor Poletajev's rating, Newly Weds argued that Mr. Fleming is not entitled to a resulting award because he abandoned his employment. Mr. Fleming countered that he did not come to work because Newly Weds fired him.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

At a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he is entitled to the requested benefits. *Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *10-11 (May 15, 2017); *see also* Tenn. Code Ann. § 50-6-239(c)(6)

---

[3] The attendance policy states that an employee is subject to termination if he is "absent for three or more consecutive work days without reporting absent."

[4] Dr. Hutcheson's two-percent whole-body impairment would entitle Mr. Fleming to nine weeks of benefits. With a date of maximum medical improvement of February 22, 2016, the original compensation period under Dr. Hutcheson's rating expired on April 25, 2016. Newly Weds contended Mr. Fleming made a successful return to work because he worked 39.98 hours at an hourly pay rate of $14.27 during the week of April 22-28, 2016.

4

(2017). On the issue of work-relatedness, the employee must establish by a preponderance of the evidence that his injury or condition "arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A).

The employee's burden to prove the work-relatedness of his injury requires a showing that the employment contributed more than fifty percent in causing the injury, considering all causes. The employee must establish this to a reasonable degree of medical certainty. The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians, shall be presumed correct on the issue of causation, "but this presumption shall be rebuttable by a preponderance of the evidence." *See generally* Tenn. Code Ann. § 50-6-102(14).

Additionally, an employee who establishes a partial disability from a compensable permanent injury is entitled to payment of PPD benefits for the number of weeks calculated by multiplying the applicable impairment rating by 450 weeks. Tenn. Code Ann. § 50-6-207(3)(A). These benefits are paid at the weekly compensation rate whether or not the employee returns to work. *Id.* The Workers' Compensation Law refers to this as the original award of PPD benefits.

Further, "[i]f at the time the [original compensation period] ends the employee has not returned to work for any employer or has returned to work and is receiving wages or a salary that is less than one hundred percent (100%) of the wages or salary received from the employee's pre-injury employer," the employee may be entitled to additional PPD benefits. This is called a resulting award.[5] Tenn. Code Ann. § 50-6-207(3)(B). These benefits are calculated by applying the multipliers in the statute.

*Original Award*

The issue regarding Mr. Fleming's original award is whether the Court should calculate it based on Dr. Hutcheson's or Chiropractor Poletajev's impairment rating. Dr. Hutcheson based his rating solely on a lumbar strain because he concluded the other conditions in Mr. Fleming's lumbar spine pre-existed the work injury and thus did not arise primarily out of and in the course and scope of employment. On the other hand, Chiropractor Poletajev based his rating on all lumbar diagnoses Mr. Fleming received.

After careful consideration, the Court holds that Mr. Fleming did not rebut the presumption of correctness afforded Dr. Hutcheson's causation opinion. In making this decision, the Court finds credible Mr. Fleming's testimony that he successfully performed physically strenuous work at Newly Weds for two years. He worked an average of almost sixty hours per week until he injured his back. However, Mr. Fleming

---

[5] The original compensation period ends when the number of weeks of the original award of PPD expires after beginning on the date of maximum medical improvement.

5

cannot meet his burden of proving the work-relatedness of his injury by his testimony alone; he must satisfy his burden by the preponderance of the expert medical evidence. He did not do this.

Dr. Hutcheson testified directly and clearly that all lumbar diagnoses except Mr. Fleming's lumbar strain pre-dated his injury and were not permanently aggravated or advanced by his work injury. He used the definitions in the Workers' Compensation Law in giving his opinion. To the contrary, Chiropractor Poletajev testified that he was not asked to perform a "medical-legal" assessment but was asked only to assign an impairment rating. The only causation opinion he gave was in response to a vaguely-worded question about whether Mr. Fleming's injury was "consistent" with his history of injury and working a job requiring a great deal of lifting. Counsel did not ask Chiropractor Poletajev about the causation of the individual diagnoses in Mr. Fleming's lumbar spine, and he did not consider the causation issue under the definitions in the statute. *See Panzarella, supra.*

For these reasons, the Court holds that Mr. Fleming is entitled to an original award of PPD benefits based on Dr. Hutcheson's two-percent whole-body impairment rating. This entitles him to nine weeks of PPD benefits based on his compensation rate of $546.27, for a total of $4,916.43.

*Resulting Award*

An additional issue is whether Mr. Fleming returned to work on the date of the expiration of the original compensation period at a wage in the same amount or higher than the pre-injury wage. If he did, he is not entitled to a resulting award.

The Court holds that the original compensation period based on Dr. Hutcheson's impairment rating began February 22, 2016, the date he assigned the rating. It ended nine weeks, or sixty-three days, later on April 25, when Mr. Fleming was employed by Newly Weds at an hourly rate almost three dollars per hour more than the pre-injury award. *See Marshall v. Mueller Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 74, at *12-13 (July 11, 2016) (the employee's wage for purposes of the application of Tennessee Code Annotated section 50-6-207(3)(B) is the employee's hourly wage). Thus, he is not entitled to a resulting award.

**IT IS, THEREFORE, ORDERED:**

1. Newly Weds shall pay Mr. Fleming an original award of PPD benefits in the amount of $4,916.43, based on Dr. Hutcheson's two-percent whole-body impairment.

2. Mr. Fleming's claim for a resulting award of PPD benefits is denied.

6

3. Mr. Fleming is entitled to future medical care of his compensable injury under the authorized care of Dr. Hutcheson.

4. The Court taxes the $150.00 filing fee to Newly Weds under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2017), to be paid within five business days from the date this order becomes final.

5. Newly Weds shall file a Statistical Data Form within ten days from the date this order becomes final.

6. Absent an appeal, this order becomes final thirty days after entry.

**ENTERED August 29, 2018.**

**JUDGE THOMAS WYATT**
**Court of Workers' Compensation Claims**

### APPENDIX

Technical record: The Court marked the following documents and considered them in deciding this claim:

1. Petition for Benefit Determination
2. Initial Dispute Certification Notice
3. Affidavit of Indigency
4. Scheduling Hearing Order
5. Mr. Fleming's Pre-Compensation Hearing Statement
6. Newly Weds' Pre-Compensation Hearing Statement
7. Newly Weds' Witness/Exhibit List
8. Newly Weds' Intent to Rely on Excerpts from the Deposition of Jose Fleming at Trial
9. Post-Mediation Dispute Certification Notice
10. Newly Weds' brief
11. Mr. Fleming's brief.

Exhibits: The Court admitted the following documents into evidence and considered them in deciding this claim unless marked for identification only:

7

1. Transcript of the Deposition of Chiropractor Victor Poletajev, plus attached exhibits
2. Transcript of the Deposition of Dr. Rickey Hutcheson, plus attached exhibits
3. Affidavit of Jose Fleming
4. Form C-42 Employee Choice of Physician
5. Mr. Fleming's paychecks from Newly Weds from July 24, 2014-July 16, 2015, and from January 7, 2016-May 5, 2016
6. Wage Statement
7. Clinical Reference Laboratory record
8. Scheduling information from ATI Physical Therapy
9. Information printed from healthline.com (for identification only because the Court sustained Newly Weds' hearsay objection)
10. Connexus Pharmacy System record/prescription signed by Dr. Hutcheson
11. Wal-Mart pharmacy record (for identification only because the Court sustained Newly Weds' hearsay objection)
12. Letter from Newly Weds to Mr. Fleming dated November 9, 2015
13. Newly Weds' Personnel Policy Manual
14. Results Physical Therapy records
15. Paychecks form Express Employment Professionals;
16. Employment application
17. Acknowledgement of Employer Handbook form
18. Acknowledgement of Employee Attendance Policy form
19. Separation Notice
20. Newly Weds New Employee Progress Report
21. Employee's Answers to Employer's and Insurance Carrier's First Interrogatories
22. Tennessee Valley Bone and Joint Patient Information form.

Agreed Facts: The parties agreed to the following facts:

1. Mr. Fleming suffered an injury at Newly Weds on July 13, 2015.
2. Mr. Fleming gave Newly Weds notice of his injury on July 13, 2015.
3. Mr. Fleming is sixty-two years old and resides in Bradley County, Tennessee.
4. Mr. Fleming received authorized medical treatment from Larry Kirk, P.A., at Physician's Care; Dr. Rickey Hutcheson (on direct referral from Physician's Care)[6], and from Dr. Jay Jolley (second opinion).
5. Mr. Fleming earned average weekly wages of $819.37 during the fifty-two weeks preceding the date of injury, entitling him to a weekly compensation rate of $546.27.

---

[6] Mr. Fleming confirmed this fact by testimony.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on August 29, 2018.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| José Fleming, Self-Represented Employee | | X | Hldsolano42@gmail.com<br>176 Lang Street<br>Cleveland, TN 37312 |
| Lee Anne Murray<br>Employer Attorney | | X | leeamuray@feeneymurray.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $ _____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe: _____ |

11. My debts are:

Amount Owed        To Whom

_____      _____

_____      _____

_____      _____

_____      _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                RDA 11082